May it please the Court, my name is Krista Lee Pollard, I'm from the Attorney General's Office, and I represent the Appellant. Appellant asks that this Court reverse the District Court's order granting Mr. Slater's habeas petition. Mr. Slater contends that the District Court properly adjudicated his petition. Mr. Slater contends that the State Courts unreasonably applied a State standard of review that didn't exist at the time of the State Court adjudications. Counsel, I read your brief simply to be asking this panel to differ with some of this Court's previous case law. You don't agree with that case law, which I understand. But I do not read your brief to argue that in fact there were sufficient reasons to deny parole that were given in this case under the State Supreme Court case. Did I correctly understand your argument to us? In my brief, I did not address the specific individual evidentiary basis for the decision, because that is also not consistent with Hayward. Well, you're really not answering my question, and maybe I haven't expressed it very well. There are at least two possible arguments that can be made for your side of this case. One is Federal courts have no business in this whole area. There's no Federal constitutional right, and all of your cases on this are just wrong. That's one possible argument. That's the argument I understood your brief to be making. A second one is that in fact, on the facts, this individual does pose an unreasonable risk of danger to the public in the present, and that applying the State law, he's not entitled to parole anyway. And I understood you to have waived that second argument by not raising it in your blue brief. Well, that argument is subsumed and underlying in the basic argument, because we lay out. Why is that the case? One of them says you guys have the law wrong, and you don't get to even ask if he's an unreasonable risk. And the other one says, okay, in the alternative, he's an unreasonable risk, and I didn't see that anywhere in your brief. Well, the alternative only arises once. We bring forth the case that whether or not there's any controlling Supreme Court authority. Mr. Slater comes back, and he doesn't identify any controlling Supreme Court authority, and instead dives directly into whether or not the State courts unreasonably applied the actual case of Lawrence. And then we respond by saying, well, he did not identify any controlling Supreme Court authority. If Hayward, Cook v. Solis, and Pearson v. Muntz remain good law in this circuit, what is left of the argument that you brought to us? The argument left is that Hayward is an en banc decision by this Court, and that would be the controlling authority. Right, and the other two cases came afterwards, and we're bound by them. Yes, but those cases can be distinguishable. First, Pirtle was not adjudicated under ADPA. I didn't mention Pirtle. I mentioned Pearson v. Muntz and Cook v. Solis. Pearson was an issue of whether or not a stay should be granted. That case has not yet been adjudicated on the merits. In fact, I think the opening brief has just been filed in that case. So that, those reasons were more akin to dicta. Second, what Cook did was it unreasonably expanded on the holding in Hayward. What it did was it essentially made the concurrence in Hayward the holding in Hayward. If those cases are binding on us, though, what remaining argument do you have? I didn't, I still don't know what that would be. If Hayward is binding on this Court. If all those cases are binding on us. Yes, but if all those cases are binding, then there's also, again, the argument in Rett, that when a federal court looks at how a state court is applying a general standard, then there's a double layer of deference. And this can be true in the sum evidence standard, because that's an extremely deferential standard of review where it is completely possible for reasonable judges to disagree. And then that is what happened. The state court judges looked at this same evidence, and they came to the conclusion that it met the standard under the state law. Let me ask you something about that. I agree with you that subsequent Ninth Circuit authority turned Hayward on its head and pretended that the concurrence was the majority opinion. I think it was just plain mistaken, but that's the way it is. And a three-judge panel can't overturn cases where the mandate is issued. So we're stuck with it. However, all that it establishes, or the most that it establishes, depending on how one reads it, is that in California at least, some evidence of future dangerousness is necessary to deny parole beyond the facts of the crime itself. Now, I looked at the parole hearing, and there the parole board plainly had things other than the crime of conviction itself. The parole board mentions not only the crime, but the particular way it was created, and in addition, institutional behavior, something about tenting and hardheadedness, which they don't like to see, and obviously not getting along with somebody in the institution that there should have been more effort to get along with. They had a number of reasons for thinking there was still some future dangerousness that needed to be dealt with, other than the crime of conviction. Then I look at the superior court decision, and the superior court decision agrees that there is a future risk of dangerousness, but all it mentions is the inexplicability of these cold-blooded executions by the prisoner. I can't remember if it was one or many executions. I think it was one. Cold-blooded execution, and that would be the crime of conviction that some thinkers, not a good reason to deny parole. Can we consider in applying 2254D2 decision that was based on an unreasonable determination of the facts and why did the evidence presented in the state court proceeding? I think that's what the dissent in Hayward and the subsequent decision went off on. Can we consider what the parole board did in addition to what the superior court did to decide whether there were facts amounting to some evidence of future dangerousness? No, but I have a two-part answer to that question. First, D2 is inapplicable because this is a whether there was sufficient evidence is a legal opinion. As this Court's recognized in Bostick, when it looked at whether there was some evidence to support a disciplinary decision, and as this Court has interpreted D2 and challenging sufficiency of the evidence and convictions, like in Sarasota v. Porter. I'm afraid I don't pronounce that correctly. So D2 is inapplicable, but even if it was, what the Court would be doing is it would look at all of these factors in combination, not each factor individually and in isolation. They look at it in total, and then they decide whether that total constitutes that some tiny modicum of evidence of unsuitability. I think the first word in your answer was no. So you're saying we can't consider the evidence. No. Not under D2. But when they apply it under D1, then yes. Did you want to save some time for rebuttal? Yes. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mark Grossman for appelling Michael Slater. Chief Justice Wardlaw, you got it exactly right. I'm Judge Graber. And I'm not a chief anything. I apologize. That's okay. I apologize, Justice Graber. This is a cut-and-paste job of the Pearson argument where this Court just got done telling the Attorney General that they misread our opinion due to a fundamental misunderstanding of Hayward. In fact, it is such a cut-and-paste job that if you look at page 6 of their brief Counsel, we're not bound by the brief. We're not entirely limited. We can say whether the law applies one way or the other with only limited restrictions on account of the brief. And I'm wondering why there isn't, even accepting what subsequent authority did with Hayward, which I disagree with, still we're bound by it. Why there isn't some evidence of dangerousness beyond the crime of conviction because of the institutional misbehavior as well as these other things. Your Honor? Behaving badly in prison is subsequent to the crime of conviction. Because let me go back to the record. Mr. Slater has a clean record. To say that he misbehaved in prison is the equivalent of saying he has a history of unstable relationships because he had a single marriage that failed after two years. His prison violation was for tenting, which has to do with the way he behaved. You said he has a clean record. You mean there are no adjudicated violations in prison? None violent. None that show any nexus to any dangerousness.  You're none each time you have a sentence. There was one evidence, one infraction involving hanging laundry in his cell, correct? Yes, Your Honor. That's the tenting. Is that the only infraction in the record? Yes. And I don't believe that's what the superior court relied on. No, it didn't. It didn't. But I'm asking you, can we? I mean, some evidence doesn't mean a lot. It doesn't mean preponderance. It doesn't mean impressive. It just means some. It's the lowest conceivable standard. So if there is an infraction for institutional misconduct, why isn't that some evidence? I'll tell you why. When the Supreme Court ---- There are other things mentioned in the parole hearing decision as well. When I was giving oral argument before the Supreme Court at the Chaputis and the Lawrence cases, the Supreme Court issued a minute order directing counsel to address the issue of whether the some evidence could be some evidence of a factor or whether the some evidence had to be tied in to the standard of current unreasonable danger to the public. The problem with what the superior court did is he ignored the Chaputis-Lawrence decisions, found some evidence of a factor, and concluded, because there is some evidence of a factor, which there always will be. But we're not bound by ---- we can't grant a writ because a superior court judge did not follow State Supreme Court authority. It's only Supreme Court authority. Well, and that issue was settled by Pearson and Hayward. Hayward tells us how to read it. And Hayward says that there is no Federal constitutional requirement of some evidence to deny parole. And then Muntz says, but in California, there is, basically. Well, if you would like me to address the Federal question, I can do that. But that's a ---- I think it's the only one we have authority to address. Well, that's not the issue. If you're addressing the Federal issue, and I believe that that's correct, and perhaps that's why they didn't raise the dangerousness in their Ninth Circuit brief, though they did at the district court, then it's clearly established they are simply disagreeing with the established law that the Federal judiciary does have the right to review State habeas decisions. She's talking about what they did, but I'm just interested in what we should do. And I still don't have a clear answer. I don't have any answer on why these factors, including the misbehavior in prison that the parole board mentions, can't be considered so that even with subsequent Ninth Circuit authority, there's some evidence. That's a matter of California Supreme Court law, and the Court, in my opinion, could ---- Counsel, let me ---- I'm confused about why we're even having this discussion. Do you agree that the State's brief argues that there was some evidence, or are they making solely a legal argument that we shouldn't have this discussion at all? I would argue that they waived it, as Your Honor suggested, and that we should not have this discussion at all. But with respect to ---- But if it is not waived, you still need to answer Judge Kleinfeld's question, which is, is there some evidence, or is it to be analyzed the way the magistrate judge and the district court did in this case? To answer Judge Kleinfeld's question, there is no evidence. That's a finding that was made by the district court, and it's not a matter of finding some evidence of some factor. It's a matter of showing my client, Richard Chaputis, lost because the Court was able to show a nexus between the some, though minimal, evidence and the current conditions that would affect public safety. In the absence of showing some connection to current public safety, there is no evidence. Was Chaputis ---- Did you misspeak and mean my client, Mr. Slater, or are you talking about the Chaputis case? No, I did not misspeak. Mr. Chaputis ---- Okay. Could you still talk about Slater and whether there's some evidence of future dangers? There's no evidence. And that's what the district court found. Why not the institutional infraction? Because there has been no finding by the State's own forensic experts, and there has been no argument advanced that shows a nexus between a violation of how he dried his laundry and current public danger. The statute in California says they shall normally get a parole date unless they pose a present unreasonable danger. It is unreasonable to suggest that a violation with respect to how he dried his clothes poses ---- shows he poses a present unreasonable danger when you have an exemplary 25-year record of compliance with regulations, taking advantage of all of the self-help programs, psychological evaluations that show he's ---- But the balancing of what's reasonable and balancing of what's reasonable and deciding on parole is ---- I didn't think that we could just decide whether the parole board was reasonable. No, Your Honor. And there is an inherent subjective factor in these decisions. And if there is any reasonable point of view that in someone's subjective opinion they can make a nexus between some evidence of some factor and a current unreasonable risk of danger to the public, we lose and Mr. Slater stays incarcerated. I'll note that Judge Philip Gutierrez about six weeks ago made the same decision that Judge Wenger made with respect to the 2007 ---- I was just going to ask you about that. It appears to me that there are two or perhaps three district court decisions for this individual, all of them coming to the conclusion that there was not some evidence to support the denial of parole at various points in time. And this is only one of those cases. But in all cases, that's been the conclusion.  Precisely, Your Honor. And where do those other cases stand? Are we first in time, that is, this is the first of the decisions adverse to him that's been thrown out by a district court so that we have no mootness problem or he's not out yet, I take it? No, Your Honor. He is out. He is out. He is out and his parole has been discharged by the order of the district court. The 2007 ---- So why isn't this case moot? Your Honor, it should be. Well, why didn't somebody tell us that at the beginning or before we had oral argument? The only reason why it wouldn't be moot is because we can anticipate that the Attorney General will also appeal the 2007 decision, that they will appeal Judge Gutierrez's recent order with respect to the 2007 hearing. So absent them being able to turn over the subsequent rulings, this case is moot. But if he lost, he could be sent back to prison, is that right? If he lost on all of them. If they reversed in this Court and they reversed in the subsequent proceedings, he could be sent back to the proceedings. Okay. So it isn't moot. Heyward was sent back to prison. Right. It raises an interesting issue with respect to the issue about discharging his parole and what the appropriate remedy should be. And though the court below What does that mean to discharge the parole? There's a statute that says for a prisoner, an inmate convicted of second-degree murder, there's a cap of five years of the parole period. From the time that he gets his parole date, if he has five years of good behavior, his parole date ends. The court below found that that date should commence at the point that he would have been given the date or at the point that the governor's opportunity to reverse would have expired, whichever is later. The court, Judge Gutierrez, with respect to the 2007 decision, was silent on that, arguably because that issue was mooted by the fact that Mr. Slater is already out and has already discharged. So as far as the current state of things, unless he's sent back to prison, he is not only not in prison, but he's no longer subject to parole either. That's correct, Your Honor. And he could not be sent back to prison, regardless of what this Court did, because Judge Gutierrez ordered his release with respect to the 2007 improper denial. I think I followed that. I'm not sure. They would have to reverse twice before he could be sent back to prison. I understand your position. Thank you. Thank you. You have about a minute. Thank you, Your Honor. Very quickly, I know that the Court understands that we have the AEDPA argument, and I will not bother the Court any further with that. With the understanding we're not waiving it. But going back, under Hayward, the actual en banc decision under Hayward, what the Court would do is simply look at whether or not the state courts actually applied the sum evidence standard. They wouldn't go into the individual intricacies of the actual decision and the weighing of the facts, as Mr. Slater would have urged this Court to do. Procedurally, you agree that he is out of prison and that his period of parole has been declared over. Is that your understanding as well? Yes. And you're trying to send him back to prison? Yes, to finish his lawful incarceration, yes. And I believe that would be the end of my time almost. Unless my colleagues have any more questions. Thank you. Thank you, Your Honor. The case just argued is submitted. And that concludes this morning's calendar. Thank you. Good night.
judges: Molloy, Kleinfeld, Graber